UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLIN RAKER DICKEY,<br><br>　　　　　　Petitioner,<br><br>　vs.<br><br>ROBERT L. AYERS, Jr., Warden<br>of San Quentin State Prison,<br><br>　　　　　　Respondent. | Case No. 1:06-CV-00357-AWI<br><br>DEATH PENALTY CASE<br><br>Order Regarding Exhaustion<br>Status, Denying Respondent's<br>Motion to Dismiss (Doc. 58), and<br>Granting Petitioner's Motion to<br>Stay the Petition and Hold Federal<br>Proceedings in Abeyance (Doc. 66) |

On March 30, 2006, Petitioner Colin Raker Dickey ("Dickey") initiated federal habeas proceedings challenging his state conviction and death sentence. Counsel was appointed to represent Dickey August 15, 2006. Dickey was granted equitable tolling of the one-year statute of limitations for the time he was without counsel during his federal proceedings. Dickey's federal petition was filed July 10, 2007. Counsel for Dickey and counsel for Respondent Robert L. Ayers, Jr. ("the Warden") met and conferred, and filed a Joint Statement on Exhaustion January 15, 2008. The Warden filed a motion to dismiss based on failure to exhaust state remedies for all claims March 3, 2008.

The parties agree about the exhaustion status of the majority of claims in Dickey's federal petition. The claims where they *disagree* about exhaustion are:

Claim 2 - subclaim Q; Claim 3 - subclaims A, B, C(iii)(b)(1), D, E except as regards Ms. Walters, F regarding paragraph 592, G, and H; Claim 18; Claim 19; and Claim 29 regarding additional unexhausted claims.  The parties do not mention whether they agree or disagree about some subparts of Claim 3, subclaims C(iii)(a) and C(iii)(d) through (i).

The parties agree the following claims are unexhausted: Claim 2 - subclaims A, B, C, D, F with regard to calling a forensic expert, G, H, J, L, V and W; Claim 4; Claim 6; Claim 7 - subclaim D; Claim 14; Claim 15; Claims 20 through 24; Claim 25 - subclaims A, B, G regarding inter-case proportionality; Claim 27, Claim 28, and Claim 29 except for additional claims determined to be unexhausted (although the Warden asserts this claim is only exhausted to the extent it is based on claims alleged in state court to be cumulative).

**Analysis of Disputed Exhaustion Status**

1. Claim 2 Q: Ineffective Assistance of Counsel at Guilt, Failure to Request Applicable Jury Instructions and for Failure to Object to Improper Instructions

Dickey asserts that Mr. Schultz's failure to request applicable jury instructions, to object to improper instructions, and to hold jury instruction discussions on the record, cumulatively, constituted deficient representation. Dickey claims that but for counsel's deficient performance, there is a reasonable probability the result of the guilt phase proceedings would have been different.

This claim was presented in Dickey's state habeas petition in claims 9, 11, 13 and 15, and the claim of cumulative error was presented at page 80.  Claim 2Q is EXHAUSTED.

/////

2.  Claim 3: Ineffective Assistance of Counsel at Penalty
    a.  subclaim A: Failure to Make the Appropriate Pretrial Motions Regarding the Penalty of Death

Dickey contends Mr. Schultz's failure to challenge the pursuit of the death penalty, on the grounds that (1) the California procedure violates international treaties (Art. VII, and Art. VI, Sec. 1 of the ICCPR), (2) the California procedure fails to avoid arbitrary and capricious infliction of the death penalty (*see* Steven F. Shatz & Nina Rivkind, *The California Death Penalty Scheme: Requiem for Furman?*, 72 New York Law Review 1283 (1997)); and (3) his sentence is arbitrary, capricious, discriminatory, and disproportionate, violating the Eighth and Fourteenth Amendments.  Dickey also contends Mr. Schultz failed to file discovery motions to assure disclosure and lead to discovery of relevant evidence, and failed to secure rulings regarding admission of evidence of the potential culpability of alternate suspects.

Claim 3A is NOT EXHAUSTED.

   b.  subclaim B: Failure to Investigate and Declare a Doubt as to Petitioner's Competence at the Penalty Phase and to Present Evidence that Petitioner was Incompetent to Waive His Constitutional Rights

Dickey asserts counsel's failure to investigate and question his competency after his refusal to communicate and his decision to absent himself from the penalty phase was deficient performance and resulted in prejudice.  Dickey contends he suffered from serious organic brain damage, Post Traumatic Stress Disorder, chronic underlying mental illness, depression and chronic substance abuse and dependency, which combined with his history of victimization and the stress of protracted legal proceedings and the courtroom setting contributed to

his incompetency to proceed at the penalty phase and his inability to assist counsel. As a result of his condition, Dickey was unable to knowingly, intelligently, and voluntarily waive any constitutional rights, including his right to be present during the penalty phase.

Claim 3B is NOT EXHAUSTED.

    c.    subclaim C(iii)(b)(1): Failure to Adequately Investigate and Present Available Mitigating Evidence of Corrupt Family Influences/Mental Illness

Dickey asserts that due to Mr. Schultz's failure to locate and interview his family and obtain significant social history records, his exposure to environ-mentally corrupt influences and profound genetic, multigenerational, family mental illness was not revealed. His maternal great aunt, Dorothy, was institutionalized as delusional, and diagnosed as schizophrenic and bipolar. His maternal grandmother, Geneva, was institutionalized after having a nervous breakdown. Another maternal great aunt, Maxine, struggled with mental health problems and at one point contemplated suicide. His paternal aunt, Lida, was diagnosed with symptoms of severe paranoid schizophrenia, and his father was described as having various mental disorders, including sadism and obsessive-compulsive behaviors.

Claim 3C(iii)(b)(1) is NOT EXHAUSTED.

    d.    subclaim C(iii)(a) and C(iii)(d) through (i): Failure to Adequately Investigate and Present Available Mitigating Evidence of Poverty, Chronic Complex PTSD, Organic Brain Impairment, Chronic Motor Tic Disorder and ADHD, Depression, Organic Substance Abuse Disorders, and Rehabilitation Efforts

Dickey asserts that due to Mr. Schultz's failure to locate and interview his

family and obtain significant social history records, the abject poverty and social isolation in which he grew up was not presented.

The subclaim regarding poverty was presented in Dickey's state habeas petition in claim 28.  There is some evidence in Dickey's federal petition which was not presented in the state petition, but exhaustion is not defeated by the inclusion of additional facts if the addition does not materially alter the substance of the claim.  *Hillery v. Vasquez*, 474 U.S. 254, 257-58, 260 (1986).  Claim C(iii)(a), Poverty is EXHAUSTED.

Dickey also asserts that due to Mr. Schultz's failure to locate and interview his family and obtain significant social history records, significant mitigation evidence of (d) Chronic Complex Post Traumatic Stress Disorder, (e) Organic Brain Impairment, (f) Chronic Motor Tic Disorder and ADHD, (g) Depression, (h) Organic Substance Abuse Disorders, and (i) Rehabilitation Efforts while awaiting trial, were not presented to the jury.  Claims C(iii)(d) through (i) are NOT EXHAUSTED.

    e.    subclaim D: Failure to Consult or Present Expert Witnesses: Social Historian, Mental Health Experts, Expert on Substance Abuse and Addiction

Dickey contends trial counsel's failure to consult, prepare and present evidence from any expert witness fell below the standard of care for a capital trial.  Trial counsel should have sought expert guidance and/or testimony from a social historian, a mental health expert, and an expert on substance abuse and addiction.

Claim 3D is NOT EXHAUSTED.  Although counsel's failure to call mental health experts is mentioned in the state petition at page 171, it is presented there as a tactical decision to avoid admission of evidence of Dickey's molestation of

1  sister and of necrophilia, not as a claim of ineffective assistance of counsel.

2       f.     subclaim E: Failure to Consult and Prepare Witnesses, except as re:
3            Ms. Walters

4  Dickey asserts that trial counsel's only preparation for the penalty phase
5  was the contemplation of calling his mother, Linda Walters, as a witness, and that
6  counsel did not look at or consider any other mitigating evidence which might
7  have been presented. Dickey contends counsel's failure to prepare for the
8  penalty phase and to adequately consult with and prepare available penalty
9  phase witnesses, caused the lack of mitigation evidence.

10  The subclaim regarding counsel's failure to consult with and prepare Ms.
11  Walters to testify in mitigation was presented in the state habeas petition in
12  Claim 28. The assertions in Claim 3E that counsel failed to consult with and
13  prepare witnesses other than Ms. Walters is NOT EXHAUSTED.

14       g.     subclaim F: Failure to Present Competent Final Argument at the
15            Penalty Phase (¶ 592)

16  Dickey asserts Mr. Schultz's argument failed to offer an justification or
17  explanation for his decision to forego the presentation of evidence at the penalty
18  phase, and failed to suggest he was relying on mitigation established at the guilt
19  phase or that such evidence was appropriate for consideration. This failure left
20  the jury to conclude the defense was conceding that the evidence at penalty was
21  wholly adverse, and in conjunction with counsel's assertion that there was an
22  absence of any mitigating factor (although he argued it was not aggravating), that
23  support for a death verdict was virtually conclusive.

24  This subclaim was presented in the state habeas petition in Claim 28. The
25  Warden's assertion that paragraph 592 is not exhausted is incorrect. Page 184 of
26  Dickey's state petition contains language almost identical to paragraph 592 of his

federal petition.  Claim 3F is EXHAUSTED.

      h.      subclaim G: Failure to Request Applicable Jury Instructions and to Object to Erroneous Jury Instructions

Dickey asserts trial counsel's failed to request applicable jury instructions addressing lingering doubt; that death is not required even if no mitigating factors are present; addressing mercy, sympathy, and pity; that the special circumstance should not be double counted; that there is no requirement to vote for death; that it should be assumed the penalty will be carried out; and that life without parole should have been defined.

Claim 3G is NOT EXHAUSTED.

      i.      subclaim H: Cumulative Penalty Phase Errors

Dickey contends the cumulative error of counsel's ineffective assistance at the penalty phase requires issuance of the writ.  Dickey argues that even if the individual claims are not found to be prejudicial, the cumulative effect of the penalty phase errors was prejudicial and mandates reversal of the death sentence.

Claim 3H is NOT EXHAUSTED.

3.      Claim 18: Prosecutor's Improper and Erroneous Argument that Aiding the Robbery/Burglary Was a Sufficient Act For Proof of Each Special Circumstance

Dickey contends the prosecutor's argument that aiding and abetting the underlying felonies was a sufficient act for proof of each special circumstance was misconduct. since under pre-June 6, 1990, law the special circumstances required proof of some act in aid of the killing.  This misconduct was compounded by the prosecutor's intentional request of modified CALJIC No. 8.80, which omitted the component of "actus reus" in aid of the commission of

first degree murder.

This claim was presented in state habeas petition in Claim 18 (the same number in state and federal petitions). Claim 18 is EXHAUSTED.

4. Claim 19: Prosecutor's Improper and Erroneous Argument that Concurrence of Intent To Kill Was Not Required in the Commission of Each Murder

The prosecutor presented, through testimony of its key witness Buchanan, the allegation that Dickey, upon seeing the first victim slumped on the floor, thought to himself, "If you kill one you might as well kill them both." This unexpressed thought was the sole basis of the prosecution's argument that Dickey formed an intent to kill. Dickey asserts the prosecutor erroneously argued that concurrence of intent to kill was not required in the commission of each murder, and the unexpressed thought attributed to Dickey was sufficient proof of intent to kill *both* victims, even though Mr. Freiri was killed prior to Dickey allegedly forming an intent to kill. Dickey contends this was not a correct statement of the law and was misconduct.

This claim was presented in state habeas petition in Claim 18. Claim 19 is EXHAUSTED.

5. Claim 29: Cumulative Error

Dickey asserts all the claims in his federal petition, when considered cumulatively, create an unacceptable level of prejudice and resulted in a miscarriage of justice. The parties agree this claim is not exhausted as it regards additional claims found to be unexhausted, but the Warden asserts it is exhausted only to extent it is based on claims alleged to be cumulative in the state court.

Claim 29 is NOT EXHAUSTED.

**Stay and Abeyance**

Dickey contends he has good cause to justify stay and abeyance of his federal petition while he seeks exhaustion of state remedies. First, Dickey asserts he pled his newly discovered claims in federal court first because of uncertainty over whether a new state petition containing those claims would be considered "properly filed" and toll the statute of limitations under 28 U.S.C. § 2244(d)(2). Second, Dickey states that based on the provision of federal funding for additional and more thorough investigation, and the claims of ineffective assistance by his appellate counsel, he potentially has good cause for the late filing of the claims under California law. Dickey asserts due to the vagueness and complexity of California's procedural bar rules, no one can reliably predict how the California Supreme Court will rule on the timeliness of a new petition presenting his unexhausted claims.[1]

Dickey contends his unexhausted claims are potentially meritorious and he has not engaged in intentionally dilatory litigation tactics. Dickey maintains that any delay in the resolution of his habeas claims is attributable to the California Supreme Court, which did not adequately fund the investigation and presentation of his habeas claims.

The Warden argues Dickey's motion should be denied because he does not show good cause to stay the federal proceedings. The Warden asserts Dickey's attempt to show good cause through his appellate attorney's negligence fails as (1) he was not constitutionally entitled to counsel on collateral review so Dickey bore the burden of raising the claims, and (2) he does not show the requisite

---

[1] Dickey presents, in support of this assertion, the analysis of the Federal Defender in a Sacramento capital case, *Musselwhite v. Ayers*, Case No. 2:01cv1443, showing that the California Supreme Court has applied its timeliness rules in an extremely unpredictable fashion.

deficient performance and prejudice to meet the *Strickland* standard.  The Warden contends that "reasonable confusion" about a state's timeliness rules, as contemplated by *Pace v. DeGuglielmo*, 544 U.S. 408, 417 (2005), does not include cases like Dickey's, where a direct appeal and state habeas petition have been completed and the new claims are trial level errors which were, or should have been, known at the time of trial.

Dickey replies the California Supreme Court is the initial arbiter of whether his new claims will be found timely, and that strong interests of comity and federalism dictate that the state have the first opportunity to correct any constitutional error.  Dickey contends he was compelled to file a federal petition in order to preserve his right to federal review, due to the lack of certainty about California's indeterminate timeliness rules.

In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court recognizes the discretion of district courts to stay and hold in abeyance mixed habeas petitions during exhaustion of federal claims in state court.  *Id*. at 276.  This discretion may be exercised upon satisfaction of three requirements.  First, there must be good cause for the petitioner's failure to have exhausted his claims "first in state court."  *Id*. at 277.  Second, the unexhausted claims must be not be "plainly meritless."  *Id*.  Finally, a mixed petition "should not be stayed indefinitely," meaning there should be specific limits on the trip to state court and back to federal court.  *Id*. at 277-78.  There also is an overarching requirement that the petitioner has not engaged in dilatory tactics.  *Id*. at 278.

Dickey has satisfied all the requirements specified in *Rhines*.  The good cause for his failure to plead the unexhausted claims during his first tour through state court is that he was without resources to adequately develop the claims.  It was not until federal proceedings were commenced that Dickey's litigation team

had access to sufficient funding to fully develop his claims.  Second, based on review of the petition, the Court finds the newly developed claims are not "plainly meritless."  Third, although the duration of the stay of federal proceedings is dependent upon how long the state exhaustion petition is pending before the California Supreme Court, abeyance will not be indefinite.  It will conclude upon the rendering of a final decision by the California Supreme Court on Dickey's state habeas exhaustion petition.  Finally, there is no evidence of dilatory tactics on the part of Dickey's litigation team.  Through case management oversight, the Court is satisfied that his attorneys immediately upon federal appointment commenced claim development through record review, witness interview, and expert consultation.  Abeyance is warranted.  "'[I]f the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in dilatory tactics,' then the district court likely 'should stay, rather than dismiss, the mixed petition.'"  *Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005) (quoting *Rhines*, 544 U.S. at 278).

   The Warden's opposition to abeyance is legally and factually unsupported.  It is unclear what the Warden is asserting by the statement that Dickey's unexhausted claims are "trial level errors" which where, or should have been, known at the time of trial.  If the Warden is arguing that the unexhausted claims should have been, but were not, objected to at trial, this is not persuasive as many of the unexhausted claims are not the type to which a contemporaneous objection could have been made.  *E.g.*, Claim 2B (Ineffective Assistance of Counsel at Guilt for Failure to Investigate and Present Available Exculpatory Evidence and Expert Testimony), Claim 3C (Ineffective Assistance of Counsel at Penalty for Failure to Investigate and Present Available Mitigating Evidence), Claim 20 (Juror

Misconduct).  Although some of the unexhausted claims may fall under this definition, *e.g.*, Claim 4 (Trial Court Error for Failure to Hold Jury Instruction Discussions on the Record and in Dickey's Presence), Claim 7 (Trial Court Error in Permitting Dickey to be Absent from Penalty Proceedings without Waiver), there is no benefit to making a determination that the state court would find those claims to be procedurally defaulted, where a return to state court is required for other claims and the ruling can be left to the state court in the first instance.

**Court Order**

The Warden's motion to dismiss Dickey's federal petition for lack of exhaustion is DENIED.

The parties agree the following claims are not exhausted: Claim 2 - subclaims A, B, C, D, F with regard to calling a forensic expert, G, H, J, L, V, and W; Claim 4; Claim 6; Claim 12 - subclaim D; Claim 14; Claim 15; Claims 20 through 24; Claim 25 - subclaims A, B, G except regarding inter-case proportionality; Claim 27, Claim 28, and Claim 29 as to additional claims determined to be unexhausted.  The court has determined the following claims are not exhausted: Claim 3 - subclaims A, B, C(iii)(b)(1), C(iii)(d) through (i), D, E except as regards Ms. Walters, G, and H; and Claim 29.

Dickey's motion to stay his federal petition and hold the federal proceedings in abeyance pending the completion of state exhaustion proceedings is GRANTED.  Dickey is ordered to file his state exhaustion petition within 60 days of the date of this order.  During the pendency of state exhaustion proceedings, Dickey shall file quarterly status reports commencing on or about the 20th of every third month beginning in July, 2008, until the conclusion of the

state proceedings. Upon that occurrence, Dickey shall immediately notify the Court of the disposition of the state proceedings, and if his state petition is denied, he shall schedule a status hearing in this Court within 30 days of the state denial.

IT IS SO ORDERED.

**Dated:    May 21, 2008**              /s/ Anthony W. Ishii
                                    UNITED STATES DISTRICT JUDGE